**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | | |
|---|---|---|
| **KENNETH P. GLUMBIK,** | ) | CV 09-55-BLG-RFC |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING** |
| | ) | **DEFENDANT'S MOTION** |
| vs. | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| **INTERSTATE POWER SYSTEMS,** | ) | |
| **INC., a Minnesota Corporation** | ) | |
| **Authorized to do Business in the State** | ) | |
| **of Montana,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.   INTRODUCTION**

Plaintiff Kenneth Glumbik filed the instant action against Defendant Interstate Power System, Inc. for lost wages under Montana's Wrongful Discharge from Employment Act ("WDEA"). Suit was initially brought in Montana's Thirteenth Judicial District Court, Yellowstone County, but Interstate removed to this Court on grounds of diversity of citizenship. Presently before the Court is Interstate's Motion for Summary Judgment. *Doc. 27.*

**II.   FACTUAL BACKGROUND**

Defendant Interstate Power System, Inc. ("Interstate") is a Minnesota corporation that operates a diesel repair distributorship and repair facility in Billings,

1

Montana. As part of its diesel engine repair business, and as required by distributorship agreements with various manufacturers, Interstate provides its customers with on call service 24 hours a day seven days a week.

In order to have employees available to help customers with diesel engine problems in the Billings region, Interstate staffs its on call service with a rotation of qualified mechanics. The rotations generally last one week and require the mechanic to carry a company cell phone after hours. Calls made to an answering service are forwarded to the company cell phone. If a service call requires the mechanic to go to the shop or a customer location, he is paid for at least two hours overtime, with double time on Sundays. The numbers of calls varies greatly, but Interstate claims that an on call mechanic will average 4 or 5 calls a week, with one or two that require actual work.[1] Interstate has had this on call system in place for many years and being on call is a job requirement for journeyman mechanics.

Plaintiff Kenneth Glumbik commenced his employment with Interstate in 1988, when it purchased the diesel repair business Glumbik had been working for. On Monday April 30, 2008, Glumbik was on call when a service call came in at approximately 5:45 p.m. Although it attempted to call the cell phone carried by

---

[1] Glumbik claims this is a low estimate of the amount of extra work involved in being on call, but this factual dispute is immaterial.

Glumbik, the answering service dialed the wrong number.  Unable to reach Glumbik, the answering service contacted Interstate foreman John Scott.  Scott placed two calls to Glumbik on the cell phone, but Glumbik did not answer.  Scott then handled the service call, which required a simple part replacement.

Glumbik did not answer Scott's calls because he had left the cell phone in his truck while he was in a bar drinking beer with a co-employee.  When Glumbik returned to his truck, he saw that Scott had tried to call him twice.  Glumbik then called Scott, who asked why he did not answer the calls.  According to Scott, Glumbik responded that he had not received any calls, but that even if he did, they could fuck off and kiss his ass because he was not going to go on a service call and then work all day.  Although he is not certain of his exact words, Glumbik admits his language was "hot and heated" and that he used the words "fuck off and kiss my ass," but he denies that he refused to take calls.  Scott responded that they would discuss it in the morning and hung up the phone.

Glumbik then called Scott a second time, telling Scott that he could not expect on call mechanics to take this "fucking phone," work on trucks all night, and then be at a job in the field the next morning.  Scott again hung up on Glumbik.

The following day, May 1, 2008, Glumbik was out of the shop in the morning on a field project.  At about 4 p.m., he was called in to a meeting with Charlie

3

Stiles, the service manager, and Mike Ray, the branch manager. Pursuant to Interstate's Employee Handbook, Interstate may terminate an employee, without progressive discipline, for any violation of company rules or other common sense reasons, including insubordination, conduct that disrupts business activities, or engaging in rude or discourteous behavior.

At the May 1, 2008 meeting, Stiles recapped the previous day's events as related by Scott. Stiles and Ray both assert that Glumbik said he did not receive the service call, but even if he had, he would not have responded because he did not like being on call. Again, Glumbik denies refusing to go on this or any other service call. Regardless, Glumbik admits that Ray told him that being on call was part of his job and that he responded that he guessed he no longer had a job. Glumbik turned in his keys and left the building.

Interstate's official position is that Glumbik was terminated for insubordination, failing to follow work rules, and failing to perform his job requirements.

### III.   ANALYSIS

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

Interstate moves for summary judgment on the entirety of Glumbik's WDEA claim, arguing it is entitled to judgment as a matter of law that Glumbik's termination (1) was not in violation of Interstate's written personnel policy and (2) was supported by good cause.

### A.   GLUMBIK'S DISCHARGE DID NOT VIOLATE ANY EXPRESS PROVISION OF INTERSTATE'S WRITTEN PERSONNEL POLICY

Under the WDEA, a termination is unlawful if "the employer violated the express provisions of its own written personnel policy." Mont. Code Ann. § 39-2-904(c)(1). Glumbik claims his termination is unlawful because it did not conform to the procedures established by Interstate's written personnel policy. *Doc. 7, ¶ 6.* Interstate's Employee Handbook provides, in relevant part:

**Discipline and Rules**

**Rules and Regulations**

It is the Company's policy that each employee will act in a professional manner with the utmost respect given to fellow workers and customers. For the protection of its property, business interests, and other employees, however, the Company must insist on certain reasonable rules of conduct. Failure to comply with these rules, and any others dictated by common sense consideration, renders the violator subject to disciplinary action, including discharge. Specific rules, among others dictated by common sense considerations, are that employees shall not:

- Misrepresent and/or withhold pertinent facts in securing employment.

- Commit insubordination, including refusal or failure to perform assigned work.

- Be inefficient or careless in the performance of job responsibilities.

- Engage in conduct, which disrupts business activities.

- Refuse to follow instructions of authorized personnel, engage in rude or discourteous conduct, or any action that endangers the health or safety of others.

- Fail to follow safety procedures including failure to report work-related injury, accident, and/or damage to Company property.

- Directly or indirectly, either for one's personal benefit or for the benefit of any other person or Company, reveal any Company trade secrets or any other Company or employee information.

- Violate a confidence; release unauthorized confidential information or official records.

- Make malicious, false, or derogatory statements that may damage the integrity or reputation of the Company or its employees.

- Deviate from credit policies without credit department approval.

- Destroy or damage Company property or personal property of others, or engage in the unauthorized removal of such property.

- Falsify company records.

- Commit negligence that results in injury to an employee, self, or a visitor.

- Engage in discriminatory conduct, actions, or sexual harassment against any other person; or violate any policy, rule, procedure, or practice established by the Company.

- Commit a crime.

**Disciplinary Provisions**

As noted above, employees of the Company are required to abide by certain rules and regulations, use their common sense, and generally treat others consistent with accepted standards of conduct. The Company's

7

purpose for requiring such conduct is to maintain a professional, pleasant work environment for all of its employees, to provide the best customer service in the industry, and to maintain an efficient and profitable business enterprise.

The Company's normal practice is to help an employee identify problems and to improve the performance and behavior of the employee. However, failure to observe established rules and practices may lead to disciplinary action. Such action may, in the Company's sole discretion include any action up to and including termination. The Company does not maintain a progressive discipline system. Each incident is handled independently and the consequences of each disciplinary matter are independent of any other disciplinary situation, involving the affected employee or any other employee past or present.

*Doc. 30, Ex. C,* Affidavit of Michael Ray (May 20, 2010).

Although he recognizes that the Employee Handbook clearly states Interstate "does not maintain a progressive discipline system" and that "[e]ach incident is handled independently and the consequences of each disciplinary matter are independent of any other disciplinary situation," Glumbik clings to the statement in the Employee Handbook providing that Interstate's "normal practice is to help an employee identify problems and to improve the behavior of the employee." Accordingly, Glumbik alleges his termination was unlawful under § 39-2-904(c)(1) because he was terminated without an opportunity to identify his problems and improve his behavior. Similarly, Glumbik argues that since the Employee Handbook does not expressly provide for "immediate" termination, Interstate

unlawfully terminated him at the May 1, 2008 meeting.

Glumbik's arguments, however, are meritless. The "express provisions" of the Employee Handbook provide that employees are subject to discharge, without progressive discipline, for failure to comply with the rules established in the Employee Handbook. For that reason, there is no genuine issue for trial as to whether Interstate violated the express provisions of its written personnel policy and summary judgment must be granted as to Interstate on this portion of Glumbik's WDEA claim.

### B.   INTERSTATE HAD GOOD CAUSE TO TERMINATE GLUMBIK BECAUSE HE REFUSED TO PARTICIPATE IN A JOB REQUIREMENT THAT HE TAKE CALLS WHILE ON CALL

Glumbik alleges his discharge was unlawful pursuant to § 39-2-904(1)(b) because it was not for good cause and he had completed the employer's probationary period of employment. *Doc. 7, ¶ 5*. Interstate argues it is entitled to summary judgment because the undisputed facts establish it had good cause to terminate Glumbik for his refusal to participate in the on call requirements of his job.

Under the WDEA, good cause "means reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Mont. Code Ann. § 39-

9

2-903(5).  "A legitimate business reason for termination is defined as a reason that is neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Johnson v. Costco Wholesale,* 152 P.3d 727, 733 (Mont. 2007) (internal quotations omitted).  The Montana Supreme Court has expressly held that refusal to fulfill job requirements is good cause for discharge.  *Mysse v. Martens,* 926 P.2d 765, 770 (Mont. 1996).

At his deposition, John Scott testified that after he told Glumbik not to worry about missing the phone calls because Scott had already performed the repair, Glumbik told him, with vitriol and untoward language, that he didn't care whether the job was done or not because he was not going to do any more call-outs.  John Scott Depo., 8:5-16 (May 20, 2010), attached as *Ex. D to Doc. 28*, Interstate's Statement of Undisputed Facts.

Similarly, Michael Ray avers that during his May 1, 2008 meeting with Charles Stiles and Glumbik, Glumbik acknowledged that he did not receive Scott's phone calls the evening before, but said that he would not have gone on the call even if he had because he was not going to deal with being on call.  *Doc. 30,* Aff. Michael Ray, ¶ 12 (May 20, 2010).  Ray further avers that Glumbik later reiterated that he was "no longer going to participate in the call out requirements of his job" and when Ray told Glumbik that being on call was a job requirement, Glumbik said

he no longer had a job. *Id.* at ¶ 14. Ray agreed with Glumbik, who turned in his keys and left. *Id.*

Stiles' deposition testimony concerning the May 1, 2008 meeting confirms that of Ray. According to Stiles, Glumbik told them he did not want to be on call. Charles Stiles Depo., 16:15-18 (May 20, 2010), attached as *Ex. B. to Doc. 28*, Interstate's Statement of Undisputed Facts. More importantly, since expressing displeasure with being on call is not the same as refusing to be on call, Stiles reiterated that when he and Ray told Glumbik that being on call was part of the job, Glumbik responded that he guessed he did not have a job. *Id.* at 16:18-19.

Considering this testimony, Interstate has satisfied its initial burden of production. Glumbik, however, attempts to create a genuine issue of material fact by denying that he ever refused to be on call. Specifically, at his deposition, Glumbik was presented with an email from Scott reiterating the phone conversations Scott had with Glumbik on the evening of April 30, 2008. Depo. Kenneth Glumbik , 46:12 - 47:4 (Feb. 24, 2010). In the email, Scott said Glumbik "had called and told me that he had not received any calls, and that even if he had, you call can fuck off and kiss his ass, he was not going on a service call and then working all day." *Id.* at 47:1-4. When asked if he said that to Scott, Glumbik at first said that he did not remember saying that, but then remembered that he said "something like that."

*Id.* at 47:4 - 9.  Although this testimony is not conclusive evidence that Glumbik refused to go on service calls, it is consistent with the accounts of Stiles, Scott, and Ray that Glumbik refused to do his job.

Later in his deposition, however, Glumbik testified that, during the May 1, 2008 meeting, he never told Stiles or Ray that he was not going to take calls on call. *Id*. at 48: 16-18.  This is Glumbik's best evidence.  But this denial is overcome by Glumbik's admission that he told Ray he guessed he no longer had a job when Ray told him that being on call was a part of his job.  *Id.* at 48:19-25.

The inquiry does not end here, because an employee may survive summary judgment on good cause by proving that the given reason is a pretext and not the honest reason for the discharge.  *Becker v. Rosebud Operating Services, Inc,* 191 P.3d 435, 441 (Mont. 2008).  Although he does not fully develop this argument in his brief, Glumbik's statement of genuine issues implies he was fired for other reasons than his refusal to be on call. In any event, Glumbik's claim that his termination was caused by something other than his refusal to the work required of him is simply speculation.

Glumbik implies that he was terminated because he was having health problems.  *Doc. 33, p.3.*  Regardless, Mike Ray was the person who fired Glumbik and the undisputed fact is that he had no idea Glumbik was having problems with

12

his feet until after Glumbik was terminated.  Depo. Mike Ray, 11:7- 22.

Glumbik also implies the underlying reason for his termination is that Interstate was in the process of reducing its workforce.  *Doc. 33, p. 3.* On this subject, John Scott testified that he did not think anyone was hired to replace Glumbik.  Scott Depo. 17:1-2.  Further, at the time Glumbik was terminated, Interstate had twenty shop employees, but he guesses there were less than 10 in May of 2010 because the workload declined.  *Id* at 17:2-13.  Scott's knowledge of conditions at Interstate is suspect, however, because he was no longer employed with Interstate.  *Id.* at 17:22-18:1.

Mike Ray testified the he believed there were fewer mechanics employed by Interstate than when Glumbik was fired, but the difference was not significant.  Ray Depo. 14:1-10.  Moreover, Ray testified that his industry goes through highs and lows in workforce size and that he thought that generally workforces were lower between May 2008 and May 2010, but that Interstate had begun to rebound in May of 2010.  *Id.* at 14:13-15:1.

Finally, Stiles testified that in late 2009 or early 2010 he was laid off from Interstate after 37 years of service when his position was eliminated because of a significant downturn in business that not only affected Interstate, but other companies in the area.  Stiles Depo. 3:16-4:25.  Stiles further testified that while two

or three people were laid off, some new people were hired between the time that Glumbik was fired and he was laid off. *Id.* at 4:5-19.

On these facts, Glumbik has failed to raise a genuine issue of material fact as to whether he was fired for any other reason than his refusal to do the work assigned to him.

### IV.   ORDER

For those reasons, **IT IS HEREBY ORDERED** that Interstate's Motion for Summary Judgment (*Doc. 27*) is **GRANTED**.

The Clerk of Court is directed to notify the parties of the entry of this Order an enter judgment accordingly.

Dated this 2nd day of August 2010.

>                   */s/ Richard F. Cebull*_____
>                   Richard F. Cebull
>                   United States District Judge